[Cite as *State v. Whitt*, 2011-Ohio-3022.]

COURT OF APPEALS
COSHOCTON COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO | : | JUDGES: |
| | : | |
| | : | Hon. W. Scott Gwin, P.J. |
| Plaintiff-Appellee | : | Hon. Sheila G. Farmer, J. |
| | : | Hon. Patricia A. Delaney, J. |
| -vs- | : | |
| | : | Case No. 10-CA-10 |
| STEPHEN H. WHITT | : | |
| | : | |
| | : | |
| Defendant-Appellant | : | O P I N I O N |


CHARACTER OF PROCEEDING:      Appeal from the Coshocton County Court of
                             Common Pleas Case No. 09-CR-0067


JUDGMENT:                    AFFIRMED IN PART; REVERSED IN
                             PART AND REMANDED


DATE OF JUDGMENT ENTRY:      June 13, 2011


APPEARANCES:

For Plaintiff-Appellee:                    For Defendant-Appellant:

JASON W. GIVEN                             KEITH O'KORN
Coshocton County Prosecuting Attorney      440 Polaris Parkway, Suite 140
318 Chestnut Street                        Westerville, Ohio 43082
Coshocton, Ohio 43812

*Delaney, J.*

{¶1} Defendant-Appellant Stephen H. Whitt appeals from the judgment of the Coshocton County Court of Common Pleas, convicting him of two counts of rape and two counts of sexual battery.

{¶2} The minor victim, N.P. was born on January 25, 1995, making her twelve and thirteen years old at the time of the offenses described herein. N.P. has two brothers, one older and one younger. All three children resided with their grandmother and her husband, the Appellant, in Coshocton County, Ohio. N.P. has lived with her grandparents since she was two years old and viewed them as her parents.

{¶3} In May or June, 2007, Appellant took N.P. and her brothers on a camping trip to Sunbury, Ohio. N.P. was twelve years old at the time. N.P.'s brothers slept in one tent while N.P. and Appellant slept in the other tent. During the night, Appellant engaged in sexual intercourse with N.P.

{¶4} During this same time period, N.P. and her younger brother rode with Appellant in his semi-truck on a trip to New York. During the trip, while N.P. was sleeping in the back of the truck, Appellant pulled over at a truck stop in Pennsylvania and again engaged in sexual intercourse with N.P.

{¶5} N.P. became pregnant and delivered a child on March 7, 2008. Subsequent DNA testing revealed that Appellant was the father of the child to a degree of 99.9998 percent.

{¶6} In May or June, 2008, when N.P. was 13 years old, N.P. went into her grandparents' bedroom to watch television while her grandfather was asleep on the bed and her grandmother was asleep in the living room. N.P. fell asleep while watching

television, and awoke to Appellant forcing vaginal intercourse upon her. Afterwards, N.P. asked Appellant why he did that and he said he did not know what she was talking about and told her that she could tell her grandmother if she wanted to. N.P. described feeling threatened by the statement and by the Appellant's demeanor towards her when he made the statement.

{¶7} During this same time period, N.P. accompanied Appellant from Coshocton County, Ohio to Tennessee in his semi-truck. She stated that she went with Appellant because she was stressed and tired from caring for her baby and that she thought that she would be able to sleep and relax on the trip. Again, while she was sleeping in the back of the truck, Appellant pulled over somewhere in Kentucky or Tennessee and forced N.P. to have sexual intercourse with him.

{¶8} N.P. became pregnant again and delivered a second child on March 2, 2009. Subsequent DNA testing revealed that Appellant was the father of the child to a degree of 99.9999 percent.

{¶9} N.P. stated that during the course of events in 2007 and 2008 when Appellant would have sex with her, she felt forced into these acts because Appellant was a parental figure and she felt she had no power to say no and if she did, it wouldn't have helped anyways. She described Appellant as being a large man, threatening and had guns in the house. She also stated that she believed that he would cease the same behavior in the future.

{¶10} Initially, N.P. lied about who was the father of her children to police and social workers because she was afraid to tell the truth. She felt threatened and wondering what would happen to her family and what Appellant would do to them if she

disclosed the truth.  She was eventually removed from the home by the Department of Job and Family Services.  At that time, N.P. disclosed what had happened between her and Appellant.

{¶11} Appellant was then indicted by the Coshocton County Grand Jury as follows: Count one, Rape of a Minor Under the Age of Thirteen [R.C. 2907.02(A)(1)(b)], a felony of the first degree; Count two, Rape [R.C. 2907.02(A)(2)], a felony of the first degree; Sexual Battery Under the Age of Thirteen [R.C. 2907.03(A)(5), a felony of the second degree; and Count four, Sexual Battery [R.C. 2907.03(A)(5)], a felony of the third degree. As set forth in the indictments, counts one and three relate to the crimes occurring between May 1, 2007 and June 30, 2007.  Counts two and four relate to the crimes occurring between May 1, 2008 and June 30, 2008.

{¶12}  During the proceedings, a search warrant was executed, and an oral swab of Appellant's mouth was taken to compare his DNA to that of N.P.'s children.  As previously stated, the test results came back conclusively that Appellant was the father of N.P.'s children.[1]

{¶13}  Appellant filed a motion claiming that he was incompetent to stand trial.  A competency evaluation was conducted and Appellant was found competent to stand trial.

{¶14}  Appellant waived in open court and in writing his right to a trial by jury. A bench trial was conducted. The trial court found Appellant guilty of all counts and merged the sexual battery convictions with the rape convictions.  Appellant was

---

[1]  As discussed infra, the Juvenile Division of the Coshocton County Court of Common also had ordered DNA testing to be conducted upon N.P., Appellant and the two infants in April, 2008, prior to Appellant's indictment.  These results also revealed that the probability of paternity showing Appellant as the father of N.P.'s children at 99.999 percent.

sentenced to an indefinite term of twenty-five years to life on the first count, when N.P. was twelve, to nine years on count two, which was the rape that occurred when N.P. was thirteen. The court also sentenced Appellant on count three, sexual battery, to a definite term of seven years in prison, and to a term of four years on count four on count four, sexual battery. The court then merged the sentences for counts three and four with the sentences for counts one and two.

{¶15} The court also notified Appellant that he would be subject to a mandatory period of postrelease control for five years.

{¶16} Appellant appealed and raises six Assignments of Error:

{¶17} "I. THE TRIAL COURT LACKED STATUTORY JURISDICTION UNDER R.C. 2901.11 TO CONSIDER THE SECOND AND FOURTH INCIDENTS AS THE ALLEGED SEXUAL CONDUCT OCCURRED OUTSIDE THE STATE OF OHIO.

{¶18} "II. APPELLANT'S CONVICTIONS WERE BOTH AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND WERE NOT SUPPORTED BY THE SUFFICIENCY OF THE EVIDENCE DUE IN PART TO THE STATE'S FAILURE TO ESTABLISH VENUE IN VIOLATION OF THE DUE PROCESS CLAUSE OF THE 14TH AMENDMENT TO THE U.S. CONSTITUTION, ARTICLE I, SECTIONS 1, 10, & 16 OF THE OHIO CONSTITUTION, R.C. 2901.12 AND CRIM. R. 29.

{¶19} "III. THE DENIAL OF THE DEFENSE SUPPRESSION MOTION AND THE ADMISSION OF THE DNA TEST RESULTS FROM THE APPELLANT'S MOUTH SWABS VIOLATED THE 4TH AMENDMENT TO THE U.S. CONSTITUTION AND ARTICLE I, SECTION 14 OF THE OHIO CONSTITUTION.

{¶20} "IV. THE TRIAL COURT LACKED JURISDICTION TO TRY THE APPELLANT WITHOUT A JURY.

{¶21} "V. THE SENTENCE WAS CONTRARY TO LAW AND ALSO VIOLATED THE 5TH AND 6TH AMENDMENTS TO THE U.S. CONSTITUTION.

{¶22} "VI. TRIAL COUNSEL RENDERED INEFFECTIVE ASSISTANCE OF COUNSEL IN VIOLATION OF THE 6TH AMENDMENT TO THE U.S. CONSTITUTION AND ARTICLE I, SECTIONS 10, 16 OF THE OHIO CONSTITUTION."

I.

{¶23} In his first assignment of error, Appellant argues that the trial court lacked territorial jurisdiction under R.C. 2901.11 to consider the second and fourth incidents of sexual misconduct as the rapes occurred outside of Ohio. Essentially, Appellant argues that two of the incidents of rape in the truck cab occurred in Pennsylvania and Tennessee and therefore, the trial court lacked statutory jurisdiction to even consider these incidents when rendering a verdict.

{¶24} Initially we note Appellant did not raise jurisdiction as an issue before the trial court. However, we acknowledge that subject matter jurisdiction cannot be waived and may be raised on appeal. *State v. Yarbrough*, 104 Ohio St.3d 1, 2004-Ohio-6087, ¶4.

{¶25} We must also point out that these two incidents were not the sole basis for the charges set forth in the indictment. As stated earlier, counts one and three relate to the crimes occurring between May 1, 2007 and June 30, 2007. At trial, not only did N.P. testify as the rape in Pennsylvania during this timeframe, she also testified to the rape in Sunbury, Ohio while camping, which also forms the basis of these counts. In addition,

counts two and four relate to the crimes occurring between May 1, 2008 and June 30, 2008, and again not only did N.P. testify as to the rape in Tennessee, she also testified to the rape in Coshocton, Ohio at the family home, which also forms the basis of these counts.

{¶26}  We will now address Appellant's contentions.

{¶27}  The General Assembly has created statutory rules of jurisdiction.

{¶28}  R.C. 2901.11, Ohio's criminal-law jurisdiction statute reads:

{¶29}  "(A) A person is subject to criminal prosecution and punishment in this state if any of the following occur:

{¶30}  "(1) The person commits an offense under the laws of this state, any element of which takes place in this state.

{¶31}  "(2) While in this state, the person conspires or attempts to commit, or is guilty of complicity in the commission of, an offense in another jurisdiction, which offense is an offense under both the laws of this state and the other jurisdiction.

{¶32}  "* * *

{¶33}  "(D) When an offense is committed under the laws of this state, and it appears beyond a reasonable doubt that the offense or any element of the offense took place either in this state or in another jurisdiction or jurisdictions, but it cannot reasonably be determined in which it took place, the offense or element is conclusively presumed to have taken place in this state for purposes of this section."

{¶34}  The 1973 Ohio Legislative Service Commission comment attached to R.C. 2901.11 states that the enactment is intended to grant Ohio courts "the broadest

possible jurisdiction over crimes and persons committing crimes in or affecting this state, consistent with constitutional limitations". *Yarbrough*, supra at ¶42.

{¶35} Ohio jurisdiction has been upheld under R.C. 2901.11 in at least two cases in which the victim was raped out of state. See *State v. Kelly* (1993), 89 Ohio App.3d 320, 624 N.E.2d 733 (Ohio had jurisdiction over in rape in Tennessee when abduction of victim began in Ohio); *State v. Shrum* (1982), 7 Ohio App.3d 244, 455 N.E.2d 531 (employment of force and threat of force beginning in Ohio until rape in Kentucky is sufficient to vest territorial jurisdiction in Ohio over rape prosecution).

{¶36} To establish the element of force in a rape case involving a minor child when the offender stands in a position of authority, neither express threat of harm nor evidence of significant physical restraint need be proven. *State v. Dye*, 82 Ohio St.3d 323, 1998-Ohio-234, 695 N.E.2d 763, syllabus. Instead, it is the position of authority and power, in relationship with the child's vulnerability, that creates a unique situation of dominance and control in which explicit threats and displays of force are unnecessary. *State v. Eskridge* (1988), 38 Ohio St.3d 56, 526 N.E.2d 304, syllabus one (the force and violence necessary to commit the crime of rape depends upon the age, size and strength of the parties and their relation to each other. With the filial obligation of obedience to a parent, the same degree of force and violence may not be required upon a person of tender years, as would be required where the parties are more nearly equal in age, size and strength).

{¶37} Accordingly, when the rape involves a child and that child's parent or a parental figure, such as a grandparent who has raised the child since the child was two, subtle and psychological forms of coercion sufficiently show force. In this case, the

victim testified that in both instances in question, she left Coshocton County with Appellant, picked up the tractor trailer in Sunbury, Ohio and then he drove her to Tennessee and New York; accordingly, part of the offense commenced within the jurisdiction of Ohio. N.P. testified that she felt as though she had no choice but to submit to sexual intercourse with Appellant and that he was a large and threatening man. In this case, the prosecution established that the victim's will was overcome by fear or duress due to Appellant's position of authority as a parental figure, and therefore the forcible element of rape was established. In addition, this relationship was established and existed in Coshocton County, where Appellant resided and raised the victim.

{¶38} Because these crimes are based either on elements that occurred in Ohio or were initiated and concluded in Ohio, we find that the trial court had jurisdiction to hear these charges.

{¶39} Appellant's first assignment of error is overruled.

II.

{¶40} In Appellant's second assignment of error, he challenges his convictions, arguing that they are against the manifest weight of the evidence and that they are not supported by sufficient evidence.

{¶41} When reviewing a claim of sufficiency of the evidence, an appellate court's role is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. *State v. Jenks* (1991), 61 Ohio St.3d 259, 574 N.E.2d 492. Contrary to a manifest weight argument, a sufficiency analysis raises a question of law and does

not allow the court to weigh the evidence. *State v. Martin* (1983), 20 Ohio App.3d 172, 175. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, "any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Thompkins,* 78 Ohio St.3d 380, 386, 1997-Ohio-52, 678 N.E.2d 541.

{¶42} Conversely, when analyzing a manifest weight claim, this Court sits as a "thirteenth juror" and in reviewing the entire record, "weighs the evidence and all reasonable inferences, considers the credibility of witnesses, and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed." *State v. Thompkins* (1997), 78 Ohio St.3d 380, 387, 678 N.E.2d 541, 548, quoting *State v. Martin* (1983), 20 Ohio App.3d 172, 175.

{¶43} In the present case, the State had to prove that Appellant engaged in sexual conduct with another person, not his spouse, who was under the age of thirteen or that he compelled the other person to engage in sexual conduct by force or threat of force.

{¶44} N.P. testified that Appellant was her grandfather who she had lived with since the age of two and that she viewed him as a father. She also testified that she felt as if she could not say no when he engaged in sexual intercourse with her and that he was threatening and large. She testified that he raped her twice in the summer of 2007, and she had a child as a result. The child was determined to have Appellant's DNA and that the statistics indicated that there was a 99.9998 percent chance that Appellant was the child's father.

{¶45} In May or June, 2008, Appellant again twice raped N.P. according to her testimony, and a child was born as a result, and DNA indicated that there was a 99.9999 percent chance that Appellant was the child's father.

{¶46} Courts have consistently held that testimony, if believed, is sufficient to prove each element of the offense of rape. *State v. Lewis* (1990), 70 Ohio App.3d 624. There is no requirement that a rape victim's testimony be corroborated as a condition precedent to conviction. Id. citing to *State v. Love* (1988), 49 Ohio App.3d 88, 91 and *State v. Gingell* (1982), 7 Ohio App.3d 364, 365. See also *In re: Fisher* (June 25, 1998), 10thDist. Nos. 97APF10-1356 & 97APF11-1552, unreported where the court held that the victim's testimony alone was sufficient to support the conviction for rape. Accord, *State v. Banks* (1991), 71 Ohio App.3d 214, 220.

{¶47} Regarding Appellant's challenge to venue, R.C. 2901.12 states that if any element of the offense occurred in the county where the case is tried, then venue is properly established for that crime.

{¶48} N.P. testified that she was raped by Appellant in his bedroom in May or June, 2008. She also testified that she resided with Appellant and her grandmother in Warsaw, Ohio, which is in Coshocton County, Ohio. Accordingly, venue was properly established for the sexual conduct occurring in counts two and four.

{¶49} With regard to the remaining elements of rape, we find that sufficient evidence was also established. As we previously stated, when rape involves a child and that child's parent, or person who stands in loco parentis, subtle and psychological forms of coercion sufficiently show force. So long as the prosecution establishes that

the victim's will was overcome by fear or duress, the forcible element of rape can be established. *State v. Eskridge* (1988), 38 Ohio St.3d 56, 58-59.

{¶50} N.P. testified that when Appellant had sex with her in his bedroom, she had been asleep and woke up to Appellant having sex with her. She also testified that she viewed Appellant as a parent and that she was fearful of saying no to him. N.P. also gave birth to two children, who Appellant was determined to be the father of.

{¶51} Regarding counts one and three, Appellant only challenges the sufficiency of the evidence as it relates to venue. Again, venue is properly established if any element of the crime has been established to have occurred in Coshocton County, Ohio. Moreover, pursuant to R.C. 2901.12(H), when an offender, as part of a course of criminal conduct, commits offenses in different jurisdiction, the offender may be tried for all of those offenses in any jurisdiction in which one of those offenses or any element of one of those offenses occurred. Prima facie evidence of a course of criminal conduct exists when the offenses involve the same victim. R.C. 2901.12(H)(1).

{¶52} There is sufficient evidence that the series of rapes occurred between Appellant and N.P. and that when Appellant would take N.P. with him in his semi-trucks on trips out of state, the trips would originate in Coshocton County, Ohio, and that Appellant and N.P. would return to Appellant's home in Coshocton County, Ohio.

{¶53} Accordingly, we find sufficient evidence to support Appellant's convictions with respect to counts one and three. Moreover, we do not find that the convictions were against the weight of the evidence. Based on the foregoing, and upon review of the record, we cannot say that the trial court clearly lost its way in convicting Appellant.

{¶54} Appellant's second assignment of error is overruled.

III.

{¶55} In Appellant's third assignment of error, he argues that the trial court erred in denying his motion to suppress the admission of the DNA results that were performed pursuant to a search warrant after Appellant was indicted.

{¶56} In reviewing the sufficiency of probable cause in an affidavit submitted in support of a search warrant, an appellate court should not substitute its judgment for that of the trial court by conducting a de novo determination as to whether the affidavit contains sufficient probable cause upon which that court would issue the search warrant. Rather, the duty of a reviewing court is simply to ensure that the trial court had a substantial basis for concluding that probable cause existed. In conducting any after-the-fact scrutiny of an affidavit submitted in support of a search warrant, appellate courts should accord great deference to the trial court's determination of probable cause, and doubtful or marginal cases in this area should be resolved in favor of upholding the warrant. *Illinois v. Gates* (1983), 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527.

{¶57} Crim. R. 41 provides that a warrant shall be issued if the issuing judge is satisfied that probable cause for the search warrant exists.  Search warrants are permitted based on hearsay.  The focus of whether sufficient grounds exist for a search warrant is whether there is reason to believe that there is a factual basis behind the information and whether the source of the information is credible.  Crim. R. 41(C)(2).

{¶58} In the present case, the judge who issued the warrant was informed that the victim, who was 14 at the time that the warrant was issued, had given birth to a child at the age of 13.  The judge was informed that the victim would not identify the father of

her children, but that family members had stated that she was sleeping with her grandfather. The issuing judge was also informed by an affidavit from the Department of Job and Family Services that a DNA test had previously been performed by means of a April 8, 2009 Court Order from the Juvenile Division which showed that it was 99.9999 percent probable that Appellant was the father of N.P.'s two children. Accordingly, we find that there was sufficient, credible information to support a finding of probable cause to issue the search warrant.

{¶59} We do not find Appellant's arguments that the fact that the prior DNA test results or the juvenile court's order were not attached to the present affidavit to be persuasive. There is no requirement that such documentation be attached to a probable cause affidavit to issue a search warrant. The issuance of the warrant was in compliance with Crim. R. 41.

{¶60} Appellant's third assignment of error is overruled.

IV.

{¶61} In his fourth assignment of error, Appellant argues that the court lacked jurisdiction to conduct a bench trial in the present case. We disagree.

{¶62} R.C. 2945.05 provides:

{¶63} "In all criminal cases pending in courts of record in this state, the defendant may waive a trial by jury and be tried by the court without a jury. Such waiver by a defendant, shall be in writing, signed by the defendant, and filed in said cause and made a part of the record thereof. It shall be entitled in the court and cause, and in substance as follows: "I _____, defendant in the above cause, hereby voluntarily waive and relinquish my right to a trial by jury, and elect to be tried by a Judge of the

Court in which the said cause may be pending. I fully understand that under the laws of this state, I have a constitutional right to a trial by jury."

{¶64} "Such waiver of trial by jury must be made in open court after the defendant has been arraigned and has had opportunity to consult with counsel. Such waiver may be withdrawn by the defendant at any time before the commencement of the trial."

{¶65} In the present case, the Appellant indicated in open court that he wished to waive his right to trial by jury and his attorney indicated that he had gone over the waiver and his rights with him prior to Appellant making the waiver in open court.

{¶66} The trial court asked Appellant to issue a written waiver as was required by R.C. 2945.05. Immediately thereafter, the court instructed the waiver to be filed in the clerk's office and proceeded with opening statements. The waiver was time stamped and made a part of the record at 10:28 a.m. on April 13, 2010, the day of the trial. Accordingly, we find that the trial court strictly complied with the requirements of R.C. 2945.05. See *State ex rel. Larkins v. Baker* (1995), 73 Ohio St.3d 658, 653 N.E.2d 701; *State v. Sereka* 8th Dist. No. 80690, 2002-Ohio-5972. There is no evidence before us in the record that the waiver was stamped after opening statements began, and thus, we presume regularity in the record.

{¶67} Appellant's fourth assignment of error is overruled.

V.

{¶68} In his fifth assignment of error, Appellant argues that his sentence was contrary to law

{¶69} Initially we find that the trial court erred in sentencing Appellant when it sentenced on allied offenses of similar import. The State agreed the sexual battery charges set forth in Counts three and four arose out of the same conduct as the rape charges in Counts one and two. The State elected to have Appellant sentenced on Counts one and two. However, in sentencing Appellant, the trial court sentenced Appellant as follows:

{¶70} On count one, the trial court sentenced Appellant to a term of twenty-five years to life. On count two, the trial court sentenced Appellant to a term of nine years. On count three, the trial court sentenced Appellant to a term of seven years. On count four, the trial court sentenced Appellant to a term of four years. The trial court then merged count three with count one and merged count four with count two, so that Appellant served an aggregate term of 34 years to life.

{¶71} R.C. 2941.25(A) clearly provides that there may be only one conviction for allied offenses of similar import. Because a defendant may be convicted of only one offense for such conduct, the defendant may be sentenced for only one offense. The Supreme Court has previously said that allied offenses of similar import are to be merged at sentencing. See *State v. Brown*, 119 Ohio St.3d 447, 2008-Ohio-4569, 895 N.E.2d 149, ¶ 43; *State v. McGuire* (1997), 80 Ohio St.3d 390, 399, 686 N.E.2d 1112. Thus, a trial court is prohibited from imposing individual sentences for counts that constitute allied offenses of similar import. *State v. Underwood*, 124 Ohio St.3d 365, 2010-Ohio-1, ¶26.

{¶72} The trial court erred in sentencing Appellant on counts three and four, as those convictions should have merged prior to sentencing, not after. Accordingly, the

trial court must resentence Appellant in accordance with R.C. 2941.25 with respect to allied offenses.

{¶73} We do not find Appellant's other arguments regarding sentencing to be persuasive. We find that the trial court properly advised Appellant of the mandatory postrelease control provisions, and that it was within the trial court's discretion to impose a sentence within the statutory range for counts one and three.

{¶74} Accordingly, Appellant's fifth assignment of error is sustained in part with respect to the trial court's error in sentencing Appellant on counts three and four before merging them with counts one and two.

VI.

{¶75} In his sixth assignment of error, Appellant argues that he was denied effective assistance of counsel. We disagree.

{¶76} To succeed on a claim of ineffectiveness, a defendant must satisfy a two-prong test. Initially, a defendant must show that trial counsel acted incompetently. *Strickland v. Washington* (1984), 466 U.S. 668, 104 S.Ct. 2052. In assessing such claims, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" Id. at 689, quoting *Michel v. Louisiana* (1955), 350 U.S. 91, 101, 76 S.Ct. 158, 164.

{¶77} "There are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in

the same way." *Strickland*, 466 U.S. at 689. The question is whether counsel acted "outside the wide range of professionally competent assistance." Id. at 690.

{¶78} Even if a defendant shows that counsel was incompetent, the defendant must then satisfy the second prong of the *Strickland* test. Under this "actual prejudice" prong, the defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.

{¶79} When counsel's alleged ineffectiveness involves the failure to pursue a motion or legal defense, this actual prejudice prong of *Strickland* breaks down into two components. First, the defendant must show that the motion or defense "is meritorious," and, second, the defendant must show that there is a reasonable probability that the outcome would have been different if the motion had been granted or the defense pursued. See *Kimmelman v. Morrison* (1986), 477 U.S. 365, 375, 106 S.Ct. 2574, 2583; see, also, *State v. Santana* (2001), 90 Ohio St.3d 513, 739 N.E.2d 798 citing *State v. Lott* (1990), 51 Ohio St.3d 160, 555 N.E.2d 293.

{¶80} Appellant argues that trial counsel's performance was deficient in several ways.

{¶81} Appellant first alleges that counsel was ineffective for failing to object to the charges on jurisdictional grounds and for failing to object to sentencing as set forth in Assignment of Error five.

{¶82} With respect to the jurisdictional issue, we find Appellant's argument to be without merit, as we have already determined that jurisdiction was properly found to be within Coshocton County, Ohio. With regard to Appellant's sentencing, we have

reversed and remanded Appellant's case for resentencing; see, Section V, supra, and accordingly, Appellant's argument is moot in this regard.

{¶83} Next, Appellant argues that trial counsel was ineffective for failing to challenge the authority of the municipal court to issue a search warrant after Appellant been indicted, without the presence of counsel. We have already addressed the validity of the search warrant above, and thus find it was not prejudicial to Appellant that the warrant was issued after he was indicted. As Appellee points out, in *State v. Spriggs*, 118 Ohio Misc.2d 189, 770 N.E.2d 638, 2000-Ohio-3697, the court stated, "the search warrant process historically is an ex parte proceeding exclusively within the province of law enforcement officers and/or the prosecution. The guilt or innocence of an accused is not an issue in the search warrant process; the issue in the search warrant process is merely whether there is probable cause to find that the search warrant will produce evidence of a crime.

{¶84} "Moreover, search warrants typically are available at any time whether the state has initiated a felony case against a defendant. Essentially, defendant's argument calls for two types of search warrant processes. The first type would be those conducted prior to the initiation of a felony case in a court of common pleas, the second type after such initiation. To so hold would radically alter criminal procedure and effectively eliminate search warrants as an investigatory tool after a felony case has begun against a defendant." *Spriggs*, supra, at ¶¶ 9-10.

{¶85} "If a defendant and counsel are permitted to take part in the search warrant process, then the state can no longer guarantee affiants and witnesses the secrecy and confidentiality the state relies upon to elicit the testimony necessary to

meet the probable cause requirement. The efficacy of search warrants as a tool to discover evidence of a crime would be lost to the state." Id. at 11.

{¶86} Even had Appellant had an attorney present at the application for the search warrant, which would have severely curtailed the efficacy of the process, he has not proven that he would have prevailed in preventing the warrant from being issued. Additionally, the DNA testing that took place as a result of the warrant merely confirmed that Appellant was the father of N.P.'s children.

{¶87}  Appellant's sixth assignment of error is overruled.

{¶88}  For the foregoing reasons, the judgment of the Coshocton County Court of Common Pleas is affirmed in part and reversed and remanded for a new sentencing hearing on the merger of counts three and four with counts one and two.

By: Delaney, J. and

Farmer, J. concurs;

Gwin, P.J. concurs in part and dissents in part.


_____
 HON. PATRICIA A. DELANEY


_____
 HON. W. SCOTT GWIN


_____
 HON. SHEILA G. FARMER

Gwin*, P.J., concurs in part, dissents in part*

{¶89} I concur in the majority's overall disposition of appellant's second, third, fourth and sixth assignments of error; however I respectfully dissent from the majority opinion concerning appellant's first and fifth assignments of error. I would sustain appellant's first assignment of error and overrule appellant's fifth assignment of error.

{¶90} In his first assignment of error appellant maintained that the trial court lacked jurisdiction under R.C. 2901.11 to consider the second and fourth counts of the indictment. I agree.

{¶91} In the case at bar, the Bill of Particulars filed by the state contained the following language,

{¶92} "CONDUCT OF THE DEFENDANT ALLEGED TO HAVE CONSTITUTED THE OFFENSES:

{¶93} "COUNTS ONE AND THREE:

{¶94} "The evidence will establish that during the time period noted in the indictment, the defendant engaged in vaginal intercourse with [N.P.], aged 12. The sexual conduct occurred at 34629 SR 36, Warsaw, in the County of Coshocton, State of Ohio. [N. P.] went to the defendant's bedroom to watch television, and the defendant engaged in sexual conduct with her. DNA testing shows that the defendant is the father of the victim's child…

{¶95} "COUNTS TWO AND FOUR:

{¶96} "During the time period noted in the indictment, which is a few months after [the child] was born, the defendant engaged in sexual conduct with [N. P.], aged 13. The sexual conduct occurred at 34629 SR 36, Warsaw, in the County of Coshocton,

State of Ohio.  DNA testing shows that the defendant is the father of the victim's child…

The victim was compelled to submit to the sexual conduct due to the fact that the

defendant is her grandfather and the father of her first child…"

{¶97}  The Bill of Particular placed the situs of the acts as 34629 SR 36, Warsaw,

in the County of Coshocton, State of Ohio. Neither the Bill of Particulars nor the

Indictment alleged the employment of force or threat of force in Ohio which persisted in

a continuous, unbroken sequence until the culmination of the rapes in another state.  It

is clear that no evidence was introduced by the state that the physical acts of sexual

conduct as they related to Counts Two and Four of the Indictment occurred anywhere

within the State of Ohio.

{¶98}  Where sex offenses completed in another state were initiated by the

application of force commencing in Ohio, Ohio courts have been held to have

jurisdiction. *State v. Kelly* (1993), 89 Ohio App.3d 320, 324-325, 624 N.E.2d 733. In

*Kelly* the appellant went to the apartment of his estranged wife located in Napoleon,

Henry County, Ohio. Once inside the apartment, appellant struck her in the face with his

.357 Magnum, causing a laceration. He then ordered his estranged wife to pack up their

two sons and herself. After she finished packing, appellant, his estranged wife and their

two sons left Napoleon for Alabama.

{¶99}  Once in the vehicle, appellant placed his gun on the floorboard by his feet.

Appellant drove from Napoleon, Ohio, through Kentucky and stopped for the evening at

a hotel in Tennessee. In the motel room, appellant forced his estranged wife to have

sexual intercourse while their sons were awake in the next bed. 89 Ohio App.3d 320,

322, 624 N.E.2d at 734. The Court found the abduction that had begun in Ohio had not

terminated in Tennessee, therefore pursuant to R.C. 2901.11(A)(1) the Ohio court had jurisdiction to convict the appellant for rape.

{¶100} Likewise in *State v. Shrum* (1982), 7 Ohio App.3d 244, 455 N.E.2d 531, cited by the majority, the evidence was that the victim was physically picked up by appellant's co-defendant and "thrown" into an automobile driven by appellant. Id. at 245, 455 N.E.2d at 532. The appellant in *Strum* drove the automobile from its location in Hamilton County, without stopping into the Commonwealth of Kentucky. Throughout this drive, the victim struggled with the co-defendant, pushing him away to keep him from manhandling her. The appellant stopped the automobile in the parking lot of a Kentucky apartment complex. The victim escaped from the car momentarily but was recaptured and then raped first by appellant and then by the co-defendant. 7 Ohio App.3d at 245, 455 N.E.2d at 532.

{¶101} In the case at bar, the victim testified that the acts relative to Count Two of the indictment occurred during a trip in which she and her little brother accompanied appellant in his semi-truck to New York. (T. at 19-20). The victim further testified that the physical penetration occurred in the State of Pennsylvania. (T. at 20). The victim testified that she went willing with appellant on that trip because she did not believe anything of a sexual nature was going to happen. (T. at 38). The victim did not testify that she was felt coerced, threatened or forced to accompany appellant on this trip. In fact, the victim never testified that appellant had specifically asked her to accompany him.

{¶102} Additionally, in the case at bar the victim testified that the acts relative to Count Four of the Indictment occurred during a trip in which she accompanied appellant

to Tennessee "or somewhere in that area." (T. at 27). The victim testified that she accompanied appellant on this trip "because I trusted him that he wouldn't do it again." (T. at 38). She further testified that her reason for going on this trip was to get away from her infant daughter because she "was so little and it was really stressful and stuff." (T. at 35). She continued, "I figured well, I can go there and sleep and stuff. And usually we would go out to like the Flying J and eat at places and play video games at the arcade and stuff." (T. at 35). In other word, she went because it was a chance for her to get away from her child for a little bit. (T. at 36). The victim did not testify that she felt coerced, threatened or forced to accompany appellant on this trip. She testified that the physical acts resulting in Count Four of the Indictment all occurred in Kentucky or Tennessee. (T. at 28-29). Again, the victim did not testify that appellant had ever requested that she accompany him on this trip.

{¶103} Although the victim testified that she felt compelled to submit to the appellant once the attacks occurred, that testimony was in relation to the commission of the physical acts themselves and not to her decision to accompany appellant on the two out-of state road trips.

{¶104} Based upon the above, I would find that the evidence failed to prove beyond a reasonable doubt that any use of force or the threat of force against the victim took place in Ohio. Accordingly, because the record manifestly demonstrates that appellee failed to prove beyond a reasonable doubt, or for that matter failed to prove at all, that any sexual conduct/contact occurred within Ohio on the subject counts the trial court should have dismissed for lack of jurisdiction Counts Two and Four of the Indictment.

{¶105} I further dissent from the majority's disposition of appellant's Fifth Assignment of Error. In light of my disposition of Appellant's First Assignment of Error, I would find appellant's Fifth Assignment of Error to be moot. In the alternative I would note that in ruling on this assignment of error the majority find "R.C. 2941.25(A) clearly provides that there may be only one conviction for allied offenses of similar import." (¶71). I disagree.

{¶106} A defendant may be indicted and tried for allied offenses of similar import, but may be sentenced on only one of the allied offenses. *State v. Brown,* 119 Ohio St.3d 447, 2008-Ohio-4569, 895 N.E.2d 149, ¶ 42, citing *Geiger,* 45 Ohio St.2d at 244, 74 O.O.2d 380, 344 N.E.2d 133. Because R.C. 2941.25(A) protects a defendant only from being punished for allied offenses, the determination of the defendant's guilt for committing allied offenses remains intact, both before and after the merger of allied offenses for sentencing. *State v. Whitfield,* 124 Ohio St.3d 319, 922 N.E.2d 182, 2010-Ohio-2 at ¶ 27. Thus, the trial court should not vacate or dismiss the guilt determination on each count. Id. *State v. Bleigh,* Delaware App. No. 09-CAA-03-0031, 2010-Ohio-1182 at ¶ 153.

{¶107} Because the trial court properly sentenced appellant by merging the sentences for Counts Three and Four into the sentences for Counts One and Two, I would overrule appellant's Fifth Assignment of Error. (Sent. T., June 11, 2010 at 14-15).

{¶108} For the foregoing reasons, I must dissent, in part.

_____
HON. W. SCOTT GWIN

[Cite as *State v. Whitt*, 2011-Ohio-3022.]

IN THE COURT OF APPEALS FOR COSHOCTON COUNTY, OHIO

FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | |
| | : | |
| | : | |
| -vs- | : | JUDGMENT ENTRY |
| | : | |
| STEPHEN H. WHITT | : | |
| | : | |
| Defendant-Appellant | : | Case No. 10-CA-10 |
| | : | |

For the reasons stated in our accompanying Memorandum-Opinion on file, the judgment of the Coshocton County Court of Common Pleas is affirmed in part and reversed in part and remanded for resentencing. Costs assessed equally to Appellant and Appellee.

 

_____
HON. PATRICIA A. DELANEY

 

_____
HON. W. SCOTT GWIN

 

_____
HON. SHEILA G. FARMER